594 S.E.2d 162

John T. BLACK, Jr., and Jeanne Jones, as Personal Representatives of the Estate of Dorothy Carter, and also as Trustees of the Trust of Melissa Lynne Carter and Cynthia Anne Carter, Sylvia Carter, Otis Calvin Carter, III, Suzanne Carter Riley, Lacy Rebecca Rhode, and John Duncan Carter, Plaintiffs,

v.

Jagdish M. PATEL and Usha M. Patel, Petitioners,

v.

Dr. Abraham Karrottukunnel, Respondent.

No. 25790.

Supreme Court of South Carolina.

Heard Jan. 8, 2004.

Decided March 8, 2004.

G. Dana Sinkler, of Warren & Sinkler, L.L.P., of Charleston, and Stephen A. Spitz, of Columbia, for Petitioners.

Michael S. Church, of Turner, Padget, Graham & Laney, P.A., of Columbia, for Respondent.

Justice WALLER:

We granted the petition for a writ of certiorari to review the Court of Appeals' decision in *Black v. Patel*, 352 S.C. 76, 572 S.E.2d 295 (Ct.App.2002). We affirm as modified.

## FACTS

By general warranty deed dated January 1, 1988, respondent Dr. Abraham Karrottukunnel conveyed to petitioners Jagdish and Usha Patel a tract of land for the sum of $460,000. The general warranty deed contains the following standard language:

> And the Grantor does hereby bind himself and his Heirs, Executors and Administrators, **to warrant and forever defend** all and singular the said premises unto the said Grantee and the Grantee's Heirs and Assigns, against the Grantor and the Grantor's Heirs and against every person whomsoever **lawfully** claiming, or to claim, the same or any part thereof.

(Emphasis added.)

In 1989, petitioners added a one-story motel building to the property. Plaintiffs, the heirs of a neighboring landowner, brought the instant action for trespass and nuisance against petitioners in 1997, asserting that the one-story building encroached on their land. Plaintiffs sought to demolish the encroaching portion of the building and recover from petitioners a proportion of the rents and profits generated by the motel.

Petitioners informed respondent about the lawsuit and, pursuant to the terms of the general warranty deed, requested he provide a defense; no response was made to their letter. Consequently, petitioners answered plaintiffs' complaint and brought a third-party complaint against respondent wherein petitioners sought an order that respondent defend the action

brought by plaintiffs. Petitioners also requested recovery of any costs, expenses **and attorneys' fees** incurred by them to defend plaintiffs' lawsuit.

The case went to trial in front of a Master–in–Equity. Although respondent never "took over" the defense of the action for petitioners, he participated at the trial as third-party defendant. Plaintiffs presented two surveyors on their behalf who relied primarily on courses and distances to establish paramount title to the disputed property; respondent presented expert testimony from his own surveyor who relied on several artificial markers to determine that the property line was as respondent had conveyed in the deed. Finding artificial markers control over a survey using courses and distances, the Master decided that petitioners successfully defended their title to the land.

In a separate order, the Master granted petitioners' request for costs against respondent, but denied attorneys' fees, citing *Jeter v. Glenn,* 43 S.C.L. (9 Rich.) 374 (1856). Petitioners appealed, and the Court of Appeals affirmed. *Black v. Patel, supra.* The Court of Appeals agreed with the Master that this Court's 1856 decision in *Jeter v. Glenn* prevented it from awarding attorneys' fees to petitioners. Petitioners now appeal to this Court.[1]

## ISSUE

Did the Court of Appeals err in affirming
the denial of attorneys' fees?

## DISCUSSION

Petitioners argue it was error to deny their request for attorneys' fees. Specifically, they contend that *Jeter v. Glenn* is distinguishable from the instant case because the issue here is a breach of the duty to defend, whereas in *Jeter,* the issue involved the breach of the warranty of freedom from encumbrances. In addition, petitioners argue that *Jeter* should be reconsidered and overruled because the warranty to defend is hollow without the availability of the remedy of attorneys' fees.

---

1. The amount of attorneys' fees at issue is $24,119.02.

In *Jeter*, the defendant (Glenn) had conveyed property by a general warranty deed to Ferdinand Scaife, who in turn later conveyed the land to the plaintiff (Jeter). The widow of an adjoining landowner **successfully** brought suit against Jeter and recovered her dower plus costs.[2] Jeter then sued Glenn for breach of warranty. The jury found in Jeter's favor and awarded him the amount of the dower, but not any costs.

Both parties appealed. The *Jeter* Court made several observations regarding the general warranty deed. For example, the Court stated that there are five covenants in the general warranty deed, to wit: (1) the vendor is seised in fee (i.e., the covenant of seisin); (2) the vendor has the right to convey; (3) the vendee, his heirs and assigns, shall quietly enjoy; (4) the property is free from all encumbrances; and (5) the covenant for further assurances. In addition, the Court noted the following regarding the warranty to defend:

> But taking our general warranty according to its words, without any reference to the usual covenants for title, and interpreting the word warrant according to its modern sense, we see that a covenant "to warrant and forever defend all and singular the premises against all persons lawfully to claim the same or any part thereof," binds the covenantor to defend every portion of the land conveyed, against all suits of which due notice shall be given to him, and in case of the lawful eviction of the vendee or his assigns, to pay the legal damages occasioned thereby.

*Jeter*, 9 Rich. at 379.

Finding that Jeter's right to quietly enjoy his land and to be free from encumbrances had been breached, the *Jeter* Court affirmed the decision in favor of Jeter. As to Jeter's claims for costs and attorneys' fees, the Court agreed he was entitled to costs, but **not** to attorneys' fees, stating there was "no authority for including counsel fees in the damages recoverable upon contracts." *Id.* at 380–81.

---

**2.** The facts of *Jeter* indicate that the widow "vouched" Glenn "to defend the suit," but it is not clear whether he participated in any way in the widow's lawsuit. As the Court of Appeals noted, "vouching in" is a common law procedural device which has now been replaced by third-party practice. *See Black v. Patel*, 352 S.C. at 79 n. 2, 572 S.E.2d at 297 n. 2.

As to petitioners' argument that *Jeter* is distinguishable from their case because this is one based upon the general warranty to defend, the Court of Appeals refused to "read *Jeter* so narrowly." *Black v. Patel,* 352 S.C. at 79, 572 S.E.2d at 297. The Court of Appeals found *Jeter* was not distinguishable on this basis, and we agree.

■ Petitioners also argue that the law set out in *Jeter* is antiquated and inequitable and therefore should be overruled. On the contrary, however, the analysis apparently used by the *Jeter* Court appears to reflect the general rule today: attorneys' fees are not recoverable unless authorized by contract or statute. *E.g., Jackson v. Speed,* 326 S.C. 289, 486 S.E.2d 750 (1997). In the instant case, the "contract" at issue is the general warranty deed, and thus we must determine whether, under the language of the deed, attorneys' fees are authorized.[3]

■ The general rule for cases in this context is that only "lawful"—that is, successful—claims asserted against title justify an award of attorneys' fees where the covenantor has failed to defend. *See Outcalt v. Wardlaw,* 750 N.E.2d 859, 863 (Ind.Ct.App.2001) ("Because the covenant of warranty does not protect against every adverse claim, 'the covenantee is not entitled to demand of his covenantor expenses incurred in the defense of a suit which sustains the conveyed title as valid.' ") (citation omitted); 20 Am.Jur.2d *Covenants* §§ 139, 140 (1995) (reasonable attorneys' fees are recoverable in an **unsuccessful** attempt to defend the title to the premises); 21 C.J.S. *Covenants* § 22 (1990) ("A covenant of warranty in a deed has been defined as ... an obligation to defend and protect the covenantee against any **rightful** claims and demands.") (footnotes omitted, emphasis added); *see also id.* at § 60(b). The covenantor must, of course, have been notified of the action and have failed to defend. *See Outcalt,* 750 N.E.2d at 863; 20 Am.Jur.2d *Covenants* § 140; *see also* 21 C.J.S. *Covenants* § 60(c) (liability of covenantor is generally dependent on giving proper notice of the litigation).[4]

---

3. We note the language in the general warranty deed is based upon state statute. *See* S.C.Code Ann. § 27–7–10 (1991).

4. There are exceptions to this rule, for example, where it is the wrongful act of the covenantor which causes the covenantee to be in litigation

We believe this rule makes logical sense. First, the covenantor has not conveyed bad title in any way, so it seems unfair to shift the burden of the costs of defense to him. Moreover, if the covenantor decides against taking over a defense of title after being notified of litigation, that is his risk to bear because if title is **unsuccessfully** defended by the covenantee, then the covenantor would be liable for breach of the general warranty deed.

■ Second, and more importantly, the language in the general warranty deed itself (which is based upon state statute) compels application of this rule. The general warranty deed specifically states that the duty to defend goes to defending only against those people "**lawfully** claiming" the land. The court in *Outcalt* held that "in the context of the covenant of warranty, a 'lawful claim' necessarily means a successful claim." *Outcalt*, 750 N.E.2d at 864. We agree that in this context, the language that a claim to title must be "lawful" in order to trigger the duty to defend indicates that the duty extends only to claims which are ultimately successful. *Cf. Murchie v. Hinton*, 41 Ark.App. 84, 848 S.W.2d 436 (1993) (where the court allowed appellant attorneys' fees after successfully defending her title since the covenant to warrant and defend **specifically** stated that "**all** claims whatever" would be defended). In other words, a covenant of warranty simply "does not protect against every **unfounded** adverse claim." 20 Am.Jur.2d *Covenants* § 139 (emphasis added).

■ Accordingly, we find that attorneys' fees were correctly denied to petitioners since title was **successfully** defended against plaintiffs' claims.[5]

Nonetheless, petitioners argue there is South Carolina precedent that establishes a duty to defend **any** claim of para-

___

with the third party, then the covenantor would be liable for costs despite the fact that the covenantee prevailed. *Outcalt*, 750 N.E.2d at 864; 21 C.J.S. *Covenants* § 60(a).

5. We note that the *Jeter* Court actually deviated from the general rule. As stated above, Jeter **unsuccessfully** defended title in the lawsuit with the widow. While the Court awarded costs, it did not allow Jeter to recover his attorneys' fees from Glenn. Therefore, to the extent *Jeter* is inconsistent with our holding in the instant case, it is hereby overruled.

mount title. *See Greer v. McFadden*, 295 S.C. 14, 366 S.E.2d 263 (Ct.App.1988). We disagree.

In *Greer v. McFadden*, the Court of Appeals stated the following:

It is admitted that Greer gave McFadden notice of the prior suit and demanded that he come in and defend. And it is the general law of the land that whenever an action is brought upon a paramount claim against any person who is entitled to the benefit of a general warranty deed, for the grantee of the general warranty deed to give proper notice to his grantor of the pendency of the suit, requiring him to come in and defend it, and thus to relieve himself from the burden of proving, in an action for the breach of the covenant, the validity of the alleged paramount claim. *See* 21 C.J.S. *Covenants* Section 89 (1940) and the cases therein cited. The purpose of the notice is that the grantor of a general warranty deed shall understand that a suit is pending asserting a superior title to the one he has warranted, and by which it is or may be in peril, and to inform him that it is for the recovery of the property he sold and that he is thereby called on to defend the title.

*Greer*, 295 S.C. at 19, 366 S.E.2d at 266.

While this language in *Greer* does seem to state there is an absolute duty to defend any claim of paramount title, we note the Court of Appeals in *Greer* also emphasized that the obligation to defend under the general warranty deed was against **lawful** claims. *Id.* Furthermore, *Greer* is both legally and factually distinguishable from the instant case. First, it did not deal with what was the appropriate measure of damages allowed by a breach of this duty. As we have just discussed, this damages question is controlled by whether title is successfully defended. Second, the *Greer* court concluded its discussion about the duty to defend by stating that the covenantor was "bound by the results" of the lawsuit between the third party and the covenantee **where the third party prevailed.** *Id.* at 20, 366 S.E.2d at 267. In other words, the facts of *Greer* involved a prior suit where paramount title had been established, which is not the instant case. Thus, *Greer* is unavailing to petitioners.[6]

---

6. In any event, we note that under the somewhat unusual facts of the instant case, respondent was brought into the case as a third party

## CONCLUSION

 In sum, we follow the general rule that where a covenantee successfully defends title, he is not entitled to attorneys' fees from the covenantor. Consequently, the Court of Appeals' decision affirming the denial of attorneys' fees is **AFFIRMED AS MODIFIED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice JAMES R. BARBER, III., concur.

---

defendant and actually participated in the defense of title by providing his own surveyor at trial. This testimony proved crucial to petitioners' success in defending title. Therefore, to some extent, respondent did "relieve" petitioners of "the burden" of proving their valid title. *Greer*, 295 S.C. at 19, 366 S.E.2d at 266. Stated differently, respondent ultimately provided a meaningful defense of the premises he had conveyed against plaintiffs' claims to paramount title.